Filed 12/12/22 P. v. Mosquera CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LORENZO MOSQUERA, <br><br> Defendant and Appellant. | F083099 <br><br> (Super. Ct. No. BF143182A) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County. Judith K. Dulcich, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Poochigian, J. and Snauffer, J.

Appellant Lorenzo Mosquera challenges the trial court's decision to extend his commitment to Patton State Hospital. Appellant's only issue in this appeal concerns the adequacy of the evidence supporting the trial court's findings. Following our review of the record, we conclude substantial evidence supports the findings made by the trial court and affirm the order extending appellant's commitment entered below.

## PROCEDURAL AND FACTUAL SUMMARY

On May 11, 2021, a petition was filed to extend appellant's commitment to the State Department of Mental Health[1] pursuant to Penal Code[2] section 1026.5, subdivision (b). The petition alleged appellant was first committed in January 2016, after having been found not guilty by reason of insanity (NGI) of attempted murder (§§ 664/187, subd. (a)), and arson causing great bodily injury (§ 451, subd. (a)). Based on the jury's verdict, the court committed appellant to a state hospital for a period of nine years, with credits of 1,334 days. This particular period of commitment was scheduled to expire in July 2021.

On May 11, 2021, the people filed a petition to extend appellant's civil commitment pursuant to section 1026.5, subdivision (b). A report prepared by a senior psychologist specialist, Kerry Hannifin, was attached to this petition and recommended appellant's commitment be extended because he posed a substantial risk of physical harm to others and continued to have difficulty controlling his dangerous behavior. This report was prepared in November 2020, approximately eight months before the trial.

Hannifin was the only witness that offered testimony at the court trial considering the petition. Hannifin testified her evaluations are usually based on a review of the patient's records, along with notes from psychiatrists, social workers, rehabilitation therapists, other psychologists, and nursing staff. Hannifin also stated she reviews

---

[1] This department is now known as the State Department of State Hospitals.

[2] All further statutory references will be to the Penal Code.

2.

incident reports, medication records, attendance at group meetings, as well as collateral contact interviews with members of the treatment team. After reviewing all this information and hopefully interviewing the patient, she prepares the report that will be submitted with the petition.

Hannifin confirmed she completed such a review when preparing the report addressing appellant's commitment, except for the face-to-face interview. Instead, the interview was conducted one week prior to the court trial due to the COVID-19 pandemic. Based on all this information, Hannifin concluded appellant lacked insight into his mental illness and his potential for violence because of his inability to recognize the triggers or warning signs of his condition and discounted the importance of staying on the prescribed medication. When specifically asked if appellant posed a substantial danger of physical harm to others, Hannifin responded as follows:

> "[Appellant] continues to experience uncontrolled psychiatric symptoms even within the confines of the structured setting of the state hospital. He does not have sufficient insight yet into the symptoms of his mental illness, his potential for substance use, his potential for any future violent behavior. He doesn't recognize the importance for continued medication use or continued treatment, and he doesn't have a plan in place for how to prevent future psychiatric decompensation, preventing that he would—or stopping himself from using substances again in the future or re-engaging in violent behavior in the future."

Hannifin explained that insight into and understanding of the mental disorder the patient is suffering from is important to prevent future aggressive behavior.

Early in her testimony, Hannifin noted appellant's claim he had not heard any voices for approximately two years. However, Hannifin's review of the records and conversations with members of appellant's treatment team revealed that just three months before the court trial, appellant reported "distressing auditory hallucinations" that required an increase in his medication. This change in medication was significant to Hannifin because it suggested appellant was unable to cope with his symptoms without

3.

an increase in a particular medication. Hannifin further explained that while appellant acknowledged his belief that people were following him, he failed to make the connection between this belief and the potential danger this might create if he was released into the community. Ultimately, Hannifin concluded her direct testimony by stating, "the most effective way for controlling his dangerous behavior would be continued treatment within the structured setting of the hospital."

During cross-examination, Hannifin explained she had never been part of appellant's treatment team and was only involved in this case as an evaluator. Hannifin agreed appellant was not on a forced medication order, and that he would have to agree to any changes to his medication, including increased dosages. Hannifin also acknowledged that approximately three months before this trial appellant voluntarily approached someone on the treatment team about his hallucinations which led to his medication being increased. Hannifin was also able to confirm appellant was "medication compliant," meaning he had been taking his medications voluntarily, for the one-year period prior to her report, and had not engaged in aggressive behavior that could be categorized as threats, or that resulted in destruction to property. Hannifin confirmed appellant's last aggressive act occurred in July 2019.

During her redirect examination, Hannifin noted auditory hallucinations are a symptom that existed at the time of his last aggressive act of physical violence in 2019. Hannifin also admitted she had not met with appellant before she wrote the report recommending an extension of his commitment. However, after meeting appellant and interviewing him just prior to the court trial, Hannifin reiterated her belief appellant's commitment should be extended.

At the close of Hannifin's testimony, certain exhibits were received into evidence, including a redacted version of the report Hannifin reviewed before preparing her report.

4.

The trial court eventually entered an order on July 22, 2021, extending appellant's commitment to Patton State Hospital for a period of two years.[3]

## DISCUSSION

Again, we have only been asked to consider whether substantial evidence supports the order entered by the trial court extending appellant's commitment.

### I.    The Applicable Standard of Review

When an individual is committed to a state hospital after being found NGI of committing a felony, but is about to reach the maximum term allowed for that commitment, the state may file a petition to extend the commitment if the medical director of the state hospital in which the person is being treated submits an opinion that "*by reason of a mental disease, defect, or disorder [the person] represents a substantial danger of physical harm to others*." (§ 1026.5, subd. (b)(1), emphasis added.) If the prosecuting attorney decides to file a petition to extend the commitment, the opinion of the medical director must then be supported by an evaluation and other relevant hospital records documenting that opinion. (§ 1026.5, subd. (b)(2).)

Appellate courts review orders to extend a commitment under section 1026.5, by "examining the entire record in the light most favorable to the order to determine whether a rational trier of fact could have found the requirements of the statute satisfied beyond a reasonable doubt." (*People v. Williams* (2015) 242 Cal.App.4th 861, 872.) Substantial evidence to support the extension of a commitment can be found in a "single psychiatric opinion." (*Ibid*.)

Appellant argues recent case law requires more caution when using the substantial evidence test to review extensions of commitments. For instance, in *People v. Cheatham* (2022) 82 Cal.App.5th 782 (*Cheatham*), the court found the evidence was insufficient to support an extension of the defendant's involuntary commitment, because the link

---

**3**      The period of extension was designated to start on July 23, 2021.

5.

between the mental disorder and the threat of harm to others was not shown. Cheatham had been diagnosed with schizoaffective disorder and a separate substance abuse disorder. The charges that led to Cheatham's commitment involved an escape from criminal custody. Once Cheatham was returned to custody, he heard voices that led him to believe the police planned to shoot him and attempted to escape again. (*Id.* at p. 786.) Even though Cheatham was committed following the attempted escape, he was given a supervised release five years later. Unfortunately, Cheatham accumulated a record of rule violations and was returned to a state hospital commitment in 2019, where a new medication was provided to stabilize his symptoms. Shortly before he was scheduled to be released from this commitment in 2021, a new petition to extend his commitment for another year was filed. This new petition was the subject of a jury trial and the subsequent appeal. (*Id.* at p. 787.)

The evidence in the record presented to support a continuation of Cheatham's commitment consisted of testimony from two psychologists and a counselor who observed Cheatham in the hospital setting. While the counselor testified to Cheatham's bizarre behavior and various rule violations, the psychologists addressed his addictive behavior and the concern he might discontinue using his medications upon being released, leading to his mental decline. No evidence was offered showing he had engaged in any dangerous behavior at any time. After reviewing the evidence presented to the jury, the appellate court stated:

> "Although we accept that *some* individuals with Cheatham's mental disorder could have serious difficulty controlling their dangerous behavior in the event that they discontinued their medication and their hallucinations that they were at risk of harm resumed, there was no evidence that tied such a conclusion to Cheatham." (*Cheatham*, *supra*, 82 Cal.App.5th, at p. 790.)

The court went on to state that while a single psychiatric opinion that a patient is dangerous could constitute substantial evidence, an unsupported psychiatric opinion was not enough. (*Cheatham*, *supra*, 82 Cal.App.5th, at p. 791.) Again, the standard for

6.

extending a commitment to a state hospital requires a finding the person poses "a substantial danger of physical harm to others" because of his mental disorder. (§ 1026.5, subd. (b)(1).) The evidence did not show Cheatham had ever posed a danger of physical harm to anyone in the past. The court concluded any speculation he might pose such a threat in the future if he stopped using his medications, was not enough to satisfy the substantial evidence test. (*Cheatham*, at pp. 793–794.)

Another recent case cited both in the *Cheatham* opinion and by appellant is *People v. Redus* (2020) 54 Cal.App.5th 998 (*Redus*). In this appeal, Redus was first committed to a state hospital in 1975 after being found NGI for the murder of his common law wife. When the trial court granted the 2017 petition to extend his commitment, Redus was 73 years old. (*Id.* at p. 1001.) While the various professionals agreed about Redus's need to stay on medication because of his particular diagnosis, the professionals disagreed on the potential danger he posed should he be released. (See *id.*, at pp. 1004–1007.) Redus's expert in fact responded to a question from the trial judge about the danger he posed by noting his stature and age. Ultimately, the trial court concluded Redus posed a substantial danger of harm to others and outside a controlled environment, he would have difficulty controlling his dangerous behavior. (*Id.* at p. 1008.)

While recognizing the issue was moot because the appeal would not be made before the term granted in the petition expired, the court in *Redus* decided to address the substantial evidence question because of its importance to further proceedings in the case. The appellate court concluded the evidence presented during the court trial did not prove "the required link between appellant's ongoing mental illness and his purported difficulty in controlling his potentially dangerous behavior." (*Redus*, *supra*, 54 Cal.App.5th at p. 1013.) The court stated:

> "[A]ppellant is an elderly man who, after almost half a century of hospitalization, continues to exhibit symptoms of his mental illness, including delusions and paranoia, and whose delusions and lack of insight into his illness are unlikely to improve very much, regardless of whether he

7.

remains hospitalized. The evidence also shows, however, that despite all of this, he has not committed a single violent or aggressive act, or even spoken in a violent or threatening way, for some 45 years." (*Redus*, *supra*, 54 Cal.App.5th at p. 1013, fn. omitted.)

What becomes clear from a review of these two cases is that the prosecution must show a connection between the mental disorder and the potential for substantial physical harm to others. (§ 1026.5, subd. (a)(1).) It is not enough to present evidence of past behaviors or threats. The key is to make a link between the individual's current mental condition and any current threat the individual might pose if not committed for an additional term. (See *Redus*, *supra*, 54 Cal.App.5th at p. 1013.) We do not view this as a new test, merely a clarification of the statutory requirements.

This court addressed the same issue in *People v. Bowers* (2006) 145 Cal.App.4th 870, in which we stated an extended detention scheme requires the state to demonstrate a " 'mental … deficiency, disorder, or abnormality' " causes the person to have difficulty controlling dangerous behavior. (*Id*. at p. 877.) In *Bowers*, the defendant was found NGI of two counts of battery on correctional officers. Our opinion concluded the evidence supported the connection between the particular disorder the defendant was diagnosed with and the risk of physical harm, specifically to authority figures, if she was released instead of being committed to a state hospital. The evidence cited by the court included the refusal to participate in treatment options and the defendant's inability to acknowledge or recognize that she suffered from a mental disorder. (*Id*. at p. 879.)

We do not view *Cheatham* or *Redus* as providing a new standard that differs from *Bowers*. The holdings in those cases are entirely consistent with our earlier holding in *Bowers* that a connection between the mental condition and the dangerous risk of harm to others must be established in the trial court.

## II.    Application

Again, our responsibility is to consider whether substantial evidence supports the trial court's decision to extend appellant's commitment. It is not our role to reweigh the

evidence, nor to discuss how we would have ruled. In recognition of our role and the standard of review discussed above, we believe substantial evidence supports the findings of the trial court.

First, there is no real question appellant suffers from a mental disease or disorder. The question we must focus on is whether substantial evidence supports the conclusion appellant's mental disorder poses a substantial risk of harm to others. That part of the section 1026.5 analysis is not as easily resolved.

A complete review of the record highlights the fact that each time appellant exhibited dangerous conduct toward others, he was experiencing hallucinations. This is true of the initial criminal act of arson for which he was found NGI, and a fight he had with a peer at Patton State Hospital in 2016. Based on this history, Hannifin found it important that appellant experienced an increase in hallucinations approximately three months before the trial on the petition to extend his commitment. Specifically, the records kept by the staff indicated these latest hallucinations led to a need to increase appellant's medications. Therefore, when Hannifin interviewed appellant one week before trial and asked him if he was experiencing any symptoms, and he responded he had not experienced any symptoms for the last two years, this information was "distressing" to Hannifin, because she knew he was ignoring or forgetting the hallucinations he experienced just three months earlier. When asked about the significance of the most recent hallucinations, Hannifin stated it "suggests that he continued as recent as April [2021] to experience symptoms similar to those at the time when he engaged in his last act of physical violence." She was also concerned that appellant would not be able to cope with another reoccurrence without the medications.

Also during this meeting, Hannifin asked appellant to identify a situation he might encounter if he was released into the community that could lead to danger. Appellant responded it might be dangerous if people were following him. This response also concerned Hannifin because a symptom of his mental illness involved a belief people

9.

were following him, and she did not believe appellant understood this particular connection to his mental illness.

A full review of Hannifin's testimony shows her returning to a certain theme, that appellant does not have sufficient insight into his condition or disorder. Hannifin explained it is important for a patient to understand their condition so that they can look for triggering events to manage their condition. Lack of control over a behavior is often a factor considered when courts are contemplating whether to extend a commitment related to mental health. (See *In re Howard N.* (2005) 35 Cal.4th 117, 129.)

On this point, Hannifin cited the fact appellant has not prepared an adequate "WRAP" plan for a post commitment life.[4] In addition, Hannifin notes appellant has not made a full commitment to participating in group therapy, often only showing up for the first five minutes when introductions are made. Hannifin believes this suggests the group sessions are either too overwhelming for appellant, or that he believes he does not need them. Finally, Hannifin expressed her concern that appellant did not fully appreciate the importance of his medications for controlling his condition by suggesting he could be weaned off those medications.

This case is distinguishable from *Cheatham*. In that case, there was no evidence from the past or present that Cheatham had ever acted dangerously toward anyone. The crimes that resulted in his commitment involved repeated acts of escaping custody and acting in a bizarre manner. In contrast here, appellant had a history of causing substantial injury to others while experiencing hallucinations, and the expert testimony offered by Hannifin suggested he had not addressed the "triggers" that could result in his engaging in such acts again.

---

**4**     This plan was defined by Hannifin as a wellness recovery plan, often including a relapse prevention plan.

*Redus* can also be distinguished. In that case, there was plenty of evidence supporting the fact Redus suffered from a mental disorder, but no evidence linking that disorder to a substantial threat of danger to others. In fact, the evidence presented in support of the petition to extend Redus's commitment to a state hospital showed he had not spoken or acted in a violent manner in over 45 years. In contrast here, appellant was still struggling with hallucinations just three months before the trial on the petition to extend his commitment, which was a symptom appellant suffered each time he became violent toward others.

After examining the entire record, we believe sufficient substantial evidence exists that a rational trier of fact could use to find appellant's mental disorder poses a substantial danger of physical harm to others beyond a reasonable doubt.

## DISPOSITION

The order entered by the trial court extending appellant's commitment to Patton State Hospital is affirmed.

11.